[998 NYS2d 293]

The People of the State of New York, Plaintiff, v Joseph Mulero, Defendant.

Supreme Court, Queens County, December 30, 2014

### APPEARANCES OF COUNSEL

*Victoria Brown-Douglas*, Queens, for defendant.

*Richard A. Brown, District Attorney* (*Timothy Bates* of counsel), for plaintiff.

### OPINION OF THE COURT

JOSEPH A. ZAYAS, J.

Defendant moves for an order dismissing the indictment on the ground that he was denied the right to testify before the grand jury (*see* CPL 190.50 [5] [c]). Defendant contends that dismissal of the indictment is warranted because the Department of Correction failed to produce him in court on the day he was scheduled to testify. The People oppose defendant's motion in its entirety. A hearing was ordered on defendant's claim to resolve the factual disputes raised by defendant's motion regarding the reason for defendant's nonproduction.

In *People v Evans* (79 NY2d 407, 414-415 [1992]), the Court of Appeals held that where a defendant, having duly served upon the People a request to testify in the grand jury, is deprived of his statutory right to testify because the Department of Correction fails to produce the defendant for that purpose, the resulting indictment must be dismissed, "assuming, of course, that any failure to afford [the defendant a timely] appearance [before the grand jury] *is not attributable to defendant[ ]*" himself (emphasis added). Defendant's CPL 190.50 motion requires the court to determine whether the Department of Correction's failure to produce defendant was directly "attributable to defendant" himself. For the reasons stated below, the court finds that defendant's nonproduction was directly attributable to defendant and that therefore his right to testify before the grand jury was not violated.[1]

### Background and CPL 190.50 Hearing

On September 15, 2014 and October 6, 2014, the court conducted a hearing on defendant's claims. The evidence presented at the hearing established the following facts. Defendant was arrested on May 20, 2014 and arraigned on May 21,

---

1. The court issued a short order, denying the defendant's motion to dismiss on December 1, 2014.

2014 for second-degree robbery and related offenses. At the Criminal Court arraignment, the People served notice pursuant to CPL 190.50 of the date of the expected grand jury presentation (May 23, 2014), indicating that defendant would have an opportunity to testify on that date. In their notice, the People indicated that if defendant is "incarcerated and [is] willing to waive the requirement under CPL 180.80, and desires to change the date on which he will testify, the Grand Jury Bureau must be contacted to determine an alternate date acceptable to the People and *within the term of the Grand Jury*" (emphasis added). At the arraignment, defendant served cross notice of his intent to testify in the grand jury and the matter was adjourned to Friday, May 23, 2014 because the actual CPL 180.80 release date fell on May 26, 2014, a legal holiday (Memorial Day) when the courts were closed.[2]

Although the court endorsement on May 23, 2014 indicates that defendant was not produced because he was "returned to Rikers" as a result "of a fight," that endorsement is clearly mistaken given the evidence adduced at the hearing which unmistakably demonstrated that defendant was, in fact, not produced on that date. The People, having already presented their case to the grand jury on May 22 and the morning of May 23, then provided legal instructions to the grand jurors after learning that defendant was not produced. The grand jury then voted to indict defendant on May 23, 2014, the last day of the grand jury term. According to defense counsel, upon learning that defendant was not produced, counsel had asked the People to delay the further presentation of the case until "May 24, 2014" (a Saturday), but the People refused.

At the CPL 190.50 hearing, defendant testified that he never left Rikers Island and was never produced in court at all on May 23, 2014. That testimony was consistent with the Department of Correction's "Undelivered Defendant" form (admitted

---

2. May 23, 2014 was the CPL 180.80 release date because defendant was arrested on May 20, 2014 and, given the intervening "Saturday, Sunday or legal holiday," the People were therefore required to obtain an indictment within "one hundred forty-four hours" (or six days) of May 20, 2014 (*see* CPL 180.80), which was May 26, 2014. Because May 26, 2014 was a legal holiday, however, the People were required, in effect, to obtain an indictment by May 23, 2014, the next previous business day (*see* Peter Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 180.80 at 236 [2007 ed] ["An additional twenty-four hours is allowed where a Saturday, Sunday or legal holiday is involved: but the *total cannot exceed 144 hours*, even if the arrest occurred on a Saturday and Monday is a legal holiday" (emphasis added)]).

as defense exhibit A), which indicated that defendant "was not produced" because he "refused to appear" in court as he was "Muslim." The form contains defendant's name, Joseph Mulero, after "Print Name:" and a signature after "Signature of Defendant."

Defendant testified that although he is Christian, he "lied" to the Department of Correction when he told them that he was "Muslim." He testified that he lied to obtain a Muslim identification card so that he would "get a better meal to eat." Defendant also admitted that he used his Muslim identification to "refuse" to go to court on May 23, 2014, "[b]ecause it's a Friday." Although defendant testified that this ploy was suggested to him by the correction officers when they brought defendant to "intake" on Rikers Island to take him to court in Queens, he admitted that he did "not remember that date clearly." He also testified that he "thinks" he signed the "Undelivered Defendant" form and "thinks" the signature on the form "might" be his, but did not "know" if the signature was his and did "not know if [the correction officers] told [him] to sign or not."

Defendant further testified that on May 22, 2014—one day after his arraignment and one day prior to the date scheduled for his court appearance and grand jury testimony—defendant was "dope sick" because he was previously taking heroin for a month and "got hooked." According to defendant, on the day of his Criminal Court arraignment, he began to suffer "withdrawals"—"throwing up," having "no energy" and being unable to "walk." He began to feel sick on the day of his arraignment and continued to feel sick on the morning of May 23, 2014, when the correction officers went to his cell and attempted to bring him to Rikers Island "intake" so that he could go to court in Queens. Defendant admitted, however, that he did not want to go to court and simply "wanted to get back to [his jail] dorm."

In support of defendant's claim that he was sick on May 23, 2014, defendant admitted into evidence (as defense exhibit B) a Department of Correction form entitled, "Arraignment and Classification Risk and Screening Form." That form, dated May 22, 2014, indicates that defendant "appear[ed]" to the correction officer to be "under [the] influence of heroin," a fact which defendant confirmed when he indicated that he was a "drug abuser (Heroin, Xanax)." The form also indicates, however, that defendant did not "have [any] immediate medical needs."

## Findings and Conclusions

Criminal Procedure Law § 190.50 (5) (a) provides, in pertinent part, that when a defendant, like defendant here, "has been arraigned in a local criminal court upon a currently undisposed of felony complaint charging an offense which is a subject of the prospective or pending grand jury proceeding," the prosecutor "must notify the defendant or his attorney of the prospective or pending grand jury proceeding and accord the defendant a reasonable time to exercise his right to appear as a witness therein."

Further, CPL 190.50 (5) (c) provides that where an indictment is obtained or filed in violation of CPL 190.50 (5) (a)—that is, where the district attorney fails to "notify the defendant or his attorney of the prospective or pending grand jury proceeding and accord the defendant a reasonable time to exercise his right to appear as a witness therein"—the resulting indictment is "invalid and, upon a motion made pursuant to . . . section 210.20, must be dismissed" (CPL 190.50 [5] [c]).

In *People v Evans* (79 NY2d 407, 414-415 [1992]), the Court of Appeals addressed the foregoing statutory provisions in three Queens County cases, where the Department of Correction failed to produce the defendants, through no fault of its own. The Court of Appeals held that where a defendant, having duly served upon the People a request to testify in the grand jury, is deprived of his statutory right to testify because the Department of Correction fails to produce defendant for that purpose, the resulting indictment must be dismissed (*id.*). The Court expressly limited its ruling, however, to those cases where the "failure to afford" defendant an opportunity to timely appear before the grand jury *"is not attributable"* to defendant himself (*id.* at 415 [emphasis added]).

Accordingly, although a defendant's statutory right to testify before the grand jury should be "scrupulously protected" (*People v Smith*, 87 NY2d 715, 721 [1996]), his right to testify is not violated where the defendant's failure to testify before the grand jury is due to his own tactical choices or ill-considered antics or shenanigans. A defendant's statutory right to testify, for example, is not violated where his failure to testify is due, inter alia, to his own refusal "to be produced" (*People v Harris*, 257 AD2d 410, 410 [1st Dept 1999]), his own absconding (*People v Turner*, 227 AD2d 120 [1st Dept 1996]), his own choice "not to testify" after he was informed that he would not be permitted to change into street clothes prior to his appearance before the grand jury (*People v Buccina*, 62 AD3d 1252, 1254 [4th

Dept 2009]), or his own choice not to testify because he "was too tired" and uncomfortable to do so (*People v Sawyer*, 274 AD2d 603, 605-606 [3d Dept 2000], *affd* 96 NY2d 815 [2001]).

Here, the People did not deprive defendant of his right to testify before the grand jury because defendant's nonproduction by the Department of Correction is directly "attributable to defendant" himself. Indeed, defendant candidly admitted during the CPL 190.50 hearing that although the Department of Correction attempted to produce him in court on the date of his scheduled testimony (Friday, May 23, 2014) by taking him out of his cell and bringing him to the "intake" section of Rikers Island, he ultimately was not produced in court because *he refused* to be produced. Defendant's testimonial admissions were buttressed by a Department of Correction form entitled "Undelivered Defendant," indicating that "defendant was not produced" because he "refused to appear" based upon his "Muslim" religion. The foregoing conclusively demonstrates that defendant's nonproduction before the grand jury was directly "attributable" (*Evans* at 415) to defendant himself, such that his right to testify was not infringed in any way.

Although defense counsel claims that she requested an adjournment of the grand jury proceedings to the next date (May 24, 2014), the People were not obliged to honor that request since the People had already presented their case to the grand jury and May 23, 2014 was the last day of the grand jury's term. Further, defense counsel's request was unreasonable on its face inasmuch as defense counsel requested an adjournment to a Saturday—a day when it is well known that the grand jury is not in session and defendant could not have been produced.

Although a timely request for a postponement of a grand jury presentation, based upon religious grounds (i.e., on the grounds that a defendant is Muslim and cannot, consistent with his religious beliefs, come to court or testify on Fridays), may be appropriate under certain circumstances (i.e., where a CPL 180.80 waiver accompanies the request), here there was no such request by defense counsel or defendant (*cf. People v Shemesh*, 51 AD3d 239 [1st Dept 2008] [where defendant requests to testify in the grand jury on a date that does not conflict with his religious obligations, the People should endeavor to accommodate that request, especially where there is a date available which does not conflict with those religious obligations], *affd* 11 NY3d 774 [2008]). Indeed, here such a request could not have been made in good faith by defendant

because he admitted that, in fact, he was a Christian and not a Muslim, and that he "lied" to the Department of Correction when he told them that he was "Muslim" only to obtain a Muslim identification card so that he would "get a better meal to eat" (*see People v Cooke*, 292 AD2d 167, 167-168 [1st Dept 2002] [trial court properly proceeded with suppression hearing in defendant's absence where "the record establishes that defendant's claim of religious observance on Fridays was not sincere"; suppression court "reasonably concluded" that defendant was " 'playing games' " when he refused to appear on religious grounds], *lv denied* 98 NY2d 636 [2002]; *see also People v Watkins*, 40 AD3d 290, 290 [1st Dept 2007] ["(D)efense counsel's deliberately dilatory and evasive conduct was nothing more than a blatant attempt to use the People's obligations under CPL 190.50 as an opportunity for gamesmanship"]).

To the extent that defendant asserts that some unnamed correction officer suggested the ploy that defendant use his illgotten Muslim identification card to refuse to go to court on religious grounds, the court declines to credit that testimony, particularly since that officer, as defendant concedes, was the very officer who brought defendant, as well as other inmates, to the Rikers Island "intake" for the very expressed purpose to produce defendant in court. The court also declines to credit that portion of defendant's testimony because defendant otherwise affirmatively testified that he himself did not want to go to court and simply "wanted to get back to [his jail] dorm" after having been brought to "intake" on Rikers Island, where he otherwise would have then entered a bus to be transported to court.

Likewise, a timely request for a postponement of a grand jury presentation, based upon illness grounds (i.e., on the grounds that defendant was "dope sick," suffering from "withdrawals," "throwing up," having "no energy" and being unable to "walk"), may be appropriate under certain circumstances (i.e., where the claim may be verified and where a CPL 180.80 waiver accompanies the request). Here, however, there was no such request by defense counsel or defendant, even though defendant began to feel sick on the day of his Criminal Court arraignment, and defense counsel, knowing that her client was infirmed, agreed to the date scheduled for the grand jury presentation. Although it is true that the date scheduled for defendant's proposed grand jury testimony was only two for defendant's proposed grand jury testimony was only two days after his Criminal Court arraignment, that truncated schedule

was occasioned not by the People's hasty choice to immediately present their case to the grand jury. Instead, that truncated schedule was necessitated by the fortuity that defendant was arrested during the week before the Memorial Day holiday, when the grand jury and the court were not in session—all of which meant that May 23, 2014 was not only the last date of the grand jury term, but was also the date by which the People were required to obtain an indictment to avoid the consequence of defendant's release pursuant to CPL 180.80 (*see* n 2, *supra*).

If defendant, suffering from heroin "withdrawals," really desired to testify in the grand jury, he could have simply waived his CPL 180.80 release rights until a date in which he anticipated he would fully recover sufficient to testify in the grand jury. Indeed, that was the whole point of the People's notice, served upon defendant during his Criminal Court arraignment, apprising defendant that if defendant is "incarcerated and [is] willing to waive the requirement under CPL 180.80, and desires to change the date on which he will testify, the Grand Jury Bureau must be contacted to determine an alternate date acceptable to the People and within the term of the Grand Jury." Instead of acting upon the People's express invitation to reschedule the grand jury testimony, defendant, knowing that he was "dope sick," agreed to a date certain for his grand jury testimony and then did not even notify his own attorney that he was refusing to be produced on illness or religious grounds.

Given defendant's silence on the date of his scheduled appearance before the grand jury and defense counsel's unreasonable request for an adjournment to a Saturday (May 24, 2014), the court finds that the People's presentation of the case to the grand jury on the last day of the grand jury's term did not violate defendant's statutory right to testify. The People, of course, did not do anything at all to interfere with defendant's right to testify since here there is no real question that defendant's nonproduction was directly "attributable" to defendant himself (*Evans* at 415), inasmuch as he, like the defendant in *People v Harris*, "refused to be produced" (*Harris* at 410).

Accordingly, defendant's motion to dismiss the indictment is denied in its entirety.